IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELVIN ACOSTA-PÉREZ,

Plaintiff,

v.                                                                  CIVIL NO.: 22-1463 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**OPINION AND ORDER**

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Mr. Elvin Acosta-Pérez's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 1. On September 12, 2018, Plaintiff filed an application for Social Security benefits, alleging that he initially became unable to work due to disability on December 6, 2017 (the "onset date"). Tr. 15. Prior to the onset date, Plaintiff's past relevant work was as a "truck driver" and "warehouse worker." Tr. 21. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. Tr. 17. Plaintiff's disability claim was denied initially on February 5, 2019, and upon subsequent reconsideration on February 7, 2020. Tr. 15.

Thereafter, Plaintiff requested a hearing which was held on April 15, 2020, before an Administrative Law Judge (the "ALJ").[1] Tr. 15. On May 5, 2021, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 23. Thereafter, Plaintiff requested review of

---

[1] The ALJ held a telephone hearing "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Tr. 15.

the ALJ's decision. Tr. 587–88. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1. Plaintiff filed a complaint on September 26, 2022. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 15–16.

## II.   LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively

determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

   In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

**III.   THE ALJ'S DECISION**

In the ALJ's decision dated May 5, 2021, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2019, the date last insured. Tr. 17, 23. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of December 6, 2017, through the date last insured. Tr. 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: "carpal tunnel syndrome, . . . [status post] right hand surgery in 2016; [p]olyosteoarthritis; [a]llergic rhinitis[;] and . . . rheumatoid arthritis." Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently reach overhead, frequently handle and finger with both upper extremities. [Plaintiff] can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, stoop frequently, kneel frequently, crouch frequently, and crawl occasionally. [Plaintiff] can work at unprotected heights occasionally, moving mechanical parts frequently and operating a motor vehicle occasionally.

Tr. 19. At step four, the ALJ determined that during the relevant period, Plaintiff was not capable of performing his past relevant work as a truck driver or warehouse worker. Tr. 21. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert ("VE"). Tr. 22. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: classifier, mail

clerk, and inspector of missing parts. Tr. 22. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 22–23.

## IV.    LEGAL ANALYSIS

Plaintiff argues that the ALJ erred in formulating the RFC assessment and developing the record. ECF No. 15 at 14, 22. The Commissioner responds, contending that the ALJ's RFC assessment was based on substantial evidence, that Plaintiff cannot show error, and that the record was adequately developed. ECF No. 16 at 4, 8.

### A. The ALJ erred in the formulation of Plaintiff's RFC.

Plaintiff asserts that the ALJ erred in formulating the RFC by determining that Plaintiff could lift up to 20 pounds and doing so by disregarding medical opinions and Plaintiff's own allegations. ECF No. 15 at 17–21. When formulating a claimant's RFC, the ALJ must base his determination on all relevant evidence, including a plaintiff's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A plaintiff's RFC is the most he can do despite limitations from his impairments. *Id.* The claimant bears the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Focusing on his hand conditions, that is, carpal tunnel syndrome and rheumatoid arthritis, Plaintiff contends that the ALJ's finding that Plaintiff could lift up to 20 pounds is unsupported. ECF No. 15 at 18. Here, the ALJ determined that Plaintiff could perform light work and added extra limitations not affecting Plaintiff's maximum lifting capabilities. Tr. 19. A claimant who can perform work at the light exertional level can lift up to 20 pounds: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). While assessing Plaintiff's RFC in the written decision,

the ALJ noted that despite Plaintiff's hand conditions, Plaintiff admitted to being able to groom, dress, drive, and care for two pet rabbits. Tr. 20 (citing *e.g.*, Tr. 83, 85). Further, the ALJ noted that despite allegations of hand pain and weakness on July 23, 2018, Plaintiff reported improvement since his carpal tunnel syndrome procedure in 2016. Tr. 20 (citing 715). Medical notes also show that Plaintiff continuously did not make any physical complaints throughout 2020. Tr. 414 (February 2020); Tr. 384 (May 2020); Tr. 368 (August 2020); Tr. 366 (November 2020). The ALJ also discussed the findings of examining internist Dr. Dilma Rosado ("Dr. Rosado") who found that, among other things, Plaintiff had mild motor strength deficits in his hands. Tr. 21 (citing Tr. 869). Dr. Rosado also concluded that despite tenderness and mild deformities of both hands, Plaintiff could still manage to grip, grasp, pinch, finger tap, oppose fingers, button a shirt, and pick up a coin. Tr. 869.

In determining Plaintiff's RFC, the ALJ also relied on the RFC assessments of the state agency consultants at the initial and redetermination level, family medicine Dr. Jóse González-Méndez and internist Dr. Ulises Meléndez, respectively. Tr. 21. Unlike the evidence detailed above, which Plaintiff does not challenge, Plaintiff contends that both state agency consultants' RFC determinations, both of which concluded that Plaintiff could lift up to 20 pounds, are deficient to support the ALJ's conclusion that Plaintiff could lift up to 20 pounds. *See* ECF No. 15 at 19. In relevant part, both state agency consultants concluded that Plaintiff could lift up to 20 pounds and had no manipulative limitations. Tr. 487–86, 506–07. Analyzing Plaintiff's complete medical record, however, the ALJ determined that, among other things, Plaintiff warranted manipulative limitations, specifically that Plaintiff could frequently handle and finger with both hands. Tr. 19, 21.

According to Plaintiff, because the ALJ determined that the updated medical record indicated that Plaintiff had manipulative limitations at the frequent level, it must follow that the ALJ could no longer rely on the state agency consultant's findings that Plaintiff could lift up to 20 pounds. *See* ECF No. 15 at 19. The fact that the ALJ concluded that the updated medical record supported frequent manipulative limitations is not, in and of itself, sufficient to show that Plaintiff could not lift up to 20 pounds. *Cf. González v. Comm'r of Soc. Sec.*, No. CV 18-1907, 2020 WL 2570010, at *11 (D.P.R. May 20, 2020) ("Here, substantial evidence supports the ALJ's determination that the Plaintiff's RFC allows him to perform light work with specific restrictions, namely, perform no more than occasional fingering (i.e., fine manipulation) with the right upper extremity, or more than frequent fingering (i.e., fine manipulation) with the left upper extremity, or more than frequent handling (i.e., gross manipulation) with either upper extremity."); *Rubildo-Rosa v. Comm'r of Soc. Sec.*, No. CV 16-2584, 2018 WL 3854419, at *10 (D.P.R. Feb. 2, 2018), *report and recommendation adopted*, No. CV1602584ADCBJM, 2018 WL 3853950 (D.P.R. Aug. 9, 2018) ("[T]he record as a whole supports a finding that [claimant] had the RFC to perform . . . light work [with additional limitations] as specified in the ALJ's decision, particularly that he could frequently handle, finger, and feel."). Hence, the ALJ could rely on the state agency consultant's finding that Plaintiff could lift up to 20 pounds.

Plaintiff further claims that the ALJ erred in calculating the RFC by disregarding Plaintiff's hearing testimony regarding his difficulties in using and moving his hands to handle, lift, and squeeze things. ECF No. 15 at 20. The ALJ did not disregard Plaintiff's allegations regarding his hand limitations. While the final decision does not, word for word, discuss all of Plaintiff's allegations at the hearing, the decision reasonably summarizes it: Plaintiff "testified he still had loss of strength, swelling, currents, deformity, constant pain, cannot open lids, difficulty

driving long distances such as 1 to 2 hours due to hand numbness and cannot make a full fist. He also reported involuntary hand movements." Tr. 20.

Next, Plaintiff alleges that the ALJ erred by disregarding the medical notes of treating physician family medicine Dr. Luiz Ortiz Ramos ("Dr. Ramos") and treating physician physiatrist Dr. Jorge Padilla ("Dr. Padilla").[2] ECF No. 15 at 21–22. This assertion, however, is not completely accurate. Indeed, the ALJ explicitly noted in the decision that "manipulative limitations can be reasonably assessed considering the findings of mild bilateral hand motor strength weakness of [Dr. Rosado] and [the] treating providers," Dr. Ramos and Dr. Padilla. Tr. 21. On the other hand, the ALJ's written decision makes clear that evidence was ignored. The ALJ noted that the "treating medical providers[] failed to document clinical or objective evidence support[ting] disabling [rheumatoid arthritis]. *There was no deformity*, atrophy, or significant arthritic changes shown." Tr. 20 (emphasis added). This was error because, contrary to the ALJ's statement that the treating providers failed to document any deformities, Dr. Ramos did note that Plaintiff presented joint deformity in his hands and a rheumatoid arthritis factor (+). Tr. 254.[3] An ALJ's findings are not conclusive when derived by ignoring evidence unless the error is shown to be harmless, "meaning that the ALJ's error would not have been outcome determinative." *Merced Rivera v. Comm'r of Soc. Sec.*, No. CV 21-1613, 2023 WL 1100774, at *7 (D.P.R. Jan. 30, 2023).

---

[2] Plaintiff refers to the medical evidence of the treating physicians as medical opinions. However, to be considered a medical opinion, a physician's statement must explain what a claimant can still do despite his or her impairment. 20 C.F.R. § 404.1513(2). Plaintiff fails to identify any statement from the treating physician's that does such. *See* ECF No. 15 at 21–22.

[3] Plaintiff further highlights the findings of Dr. Padilla, noting that, among other things, "Bilateral Median Compound Muscle Action Potentials" showed severely delayed tendencies with reduced conduction velocities, all "Sensory Nerve Action Potential" showed delayed tendencies, all F-wave studies showed borderline or delayed tendencies, and "Bactrim sign" was positive bilaterally. ECF No. 15 at 21 (citing Tr. 893).

During Plaintiff's hearing, the ALJ posed a hypothetical to the VE including nearly all of the same limitations contained in Plaintiff's RFC found in the final decision. Tr. 57–59. This hypothetical, however, was more restrictive than the RFC in the ALJ's final decision, specifically because it limited the individual to sedentary work (i.e., lifting no more than 10 pounds) and was restricted to occasional handling and fingering. *Compare* Tr. 19 (ALJ's final RFC limiting Plaintiff to light work and frequent handling and fingering, among others), *with* Tr. 58–59 (ALJ's hypothetical during the hearing limiting the individual to sedentary work and occasional handling and fingering). In response to the ALJ's hypothetical, the VE testified that an individual with that RFC would be able to work as a "surveillance system monitor," which had approximately 80,000 jobs in the national economy. Tr. 59. For purposes of the step five analysis, this is significant enough to support a finding of not disabled. *Cf. Dashnaw v. Astrue*, No. 10-CV-456, 2011 WL 5040708, at *6 (D.N.H. Oct. 24, 2011) ("The vocational expert testified that more than 30,000 positions exist in the national economy for the three sedentary jobs identified by the ALJ. That is a 'significant number' of jobs in the national economy."); *Vining vs. Astrue*, 720 F. Supp. 2d 126, 137 (D. Me. 2010) ("The figure of 11,000 jobs nationwide is in line with what courts have held to be a 'significant' number for purposes of Step 5 analysis."); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (holding "200 jobs of addresser or document preparer in Iowa and 10,000 in the national economy" was sufficient for step five). Notwithstanding the additional hypothetical given at the hearing, the ALJ's disregard of Dr. Ramos's finding that Plaintiff had deformities in his hands leaves in uncertain terrain whether greater restrictions are warranted than those given in the hypothetical. Accordingly, the ALJ's decision must be remanded for a full evaluation of Dr. Ramos's medical findings and/or notes regarding the extent of the deformities in Plaintiff's hands in the context of his rheumatoid

arthritis condition. This reevaluation, however, does not necessarily require the ALJ to change her ultimate conclusion as long as adequate explanations are placed on the record.

**B.  On remand, the ALJ will determine whether the exams detailed by Dr. Rosado are necessary to render an informed decision as to whether Plaintiff is disabled.**

Plaintiff contends that the ALJ erred in fully developing the record by failing to order an MRI and other tests. "[T]he ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Durant-Irizarry v. Comm'r of Soc. Sec.*, No. CV 14-1444, 2015 WL 8514587, at *6 (D.P.R. Dec. 11, 2015) (quoting *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993)) (internal quotes omitted). "However, the ALJ has no duty to 'go to inordinate lengths to develop a claimant's case.'" *Id.* (quoting *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977)).

Here, Plaintiff points to Dr. Rosado's evaluation notes from January 9, 2019, where Dr. Rosado noted that a "Cervical Spine MRI evaluation [wa]s indicated" and that "it would be of great value to obtain laboratories work up (Sed Rate, RA test, Serum Create, K, GFR, T3[,] T4, [and] others)."[4] Tr. 866; *accord* ECF No. 15 at 22. Plaintiff posits that the ALJ's failure "to make sure that [Plaintiff] had a complete record before making the [final d]ecision" amounts to prejudicial error because without the exams, Dr. Rosado's report is incomplete, and thus the ALJ was not entitled to award great weight to Dr. Rosado's findings. ECF No. 15 at 22–23. Here, the parties concede that most, if not all, the tests detailed by Dr. Rosado were not completed. ECF No. 16 at 9; ECF No. 15 at 23. "In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an

---

[4] Dr. Rosado is a consultative examiner for the Social Security Administration ("SSA"). *See* Tr. 21. "A consultative examination is a physical or mental examination or test purchased for you at [the SSA's] request and expense from a treating source or another medical source, including a pediatrician when appropriate." 20 C.F.R. § 404.1519.

11

examination is necessary to enable the ALJ to render an informed decision." *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1255–56 (M.D. Fla.), *aff'd sub nom. Hurley v. Comm'r of Soc. Sec.*, 147 F. App'x 103 (11th Cir. 2005); 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."). On remand, the ALJ will consider Dr. Rosado's notes regarding the MRI and other labs and determine whether the exams are necessary to make an informed decision regarding Plaintiff's disability consistent with the pertinent regulations. *See* 20 C.F.R. §§ 416.917, 404.1519.

## V. CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner regarding Plaintiff's hand and lifting limitations at the RFC stage was not based on substantial evidence and failed to follow correct legal standards. Therefore, the Commissioner's decision is VACATED, and the case REMANDED so that the ALJ may, *inter alia*, fully consider the evidence, including Dr. Ramos's medical notes regarding the extent of the deformity in Plaintiff's hands and what effect, if any, it would have on Plaintiff's RFC and his ability to perform any work available in significant numbers in the national economy. Similarly, the ALJ will consider whether the exams in Dr. Rosado's evaluation are necessary to reach a final decision regarding Plaintiff's disability.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 25th day of September, 2024.

s/Marcos E. López<br>
U.S. Magistrate Judge